# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Amalgamated Transit Union, Local 308 v. Chicago Transit Authority*,
**2012 IL App (1st) 112517**

---

| | |
|---|---|
| Appellate Court Caption | AMALGAMATED TRANSIT UNION, LOCAL 308, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-2517 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | August 7, 2012<br><br>September 13, 2012<br>September 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff union's action seeking a declaratory judgment that a side agreement to the collective bargaining agreement with defendant was invalid was properly dismissed on the ground that the grievance and arbitration process in the collective bargaining agreement controlled the dispute over the side agreement. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-29591; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Jacobs, Burns, Orlove & Hernandez, of Chicago (Anita Tanay and Taylor E. Muzzy, of counsel), for appellant.

Karen G. Seimetz, Brad Jansen, and Stephen L. Wood, all of Chicago Transit Authority, of Chicago, for appellee.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff, Amalgamated Transit Union, Local 308 (Union), filed a complaint in the circuit court of Cook County against defendant, Chicago Transit Authority (CTA), seeking a declaratory judgment that side agreement Number 30 attached as a part of Exhibit A to the parties' collective bargaining agreement (CBA) was invalid due to a lack of sufficient consideration. The circuit court granted the CTA's motion to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)), finding the collective bargaining agreement, which contained a grievance and arbitration process, governed the dispute over side agreement Number 30 between the parties. We affirm.

¶ 2                             I. BACKGROUND

¶ 3      The plaintiff, Union, is a labor organization as defined by section 3(f) of the Illinois Public Labor Relations Act (Act). 5 ILCS 315/1 *et seq.* (West 2008). The Union is the exclusive representative for certain employees of defendant, CTA's municipal rail transportation system. The CTA is a public employee as defined by section 3(o) of the Act. The Union and the CTA have a long history as parties to collective bargaining agreements dating back to at least 1915.

¶ 4      The parties' current CBA at article 20.5 incorporates, through the attachment of Exhibit A, 38 side agreements that the Union and the CTA have entered into from 1978. Article 20.5 states as follows: " SOLE AGREEMENT. This written Agreement and the documents attached hereto in Exhibit A, Local 308 and Exhibit B, Local 241, constitute the entire written Agreement between the parties, with the exception of settlement agreements." Exhibit A is actually entitled "EXHIBIT A: SOLE AGREEMENT AMALGAMATED TRANSIT UNION, LOCAL 308," and it lists in its table of contents all 38 agreements, including Number 30, entitled "Customer Assistant Coverage Criteria" and dated August 18, 2000, at pages 117-18 of Exhibit A. A footnote on page 1 of Exhibit A states, in part, that the Union and the CTA "agree to retain these side agreements without revision and alteration." The footnote also provides that "the parties agree negotiations will continue in regard to these agreements" and "will be negotiated in good faith with the goal of reaching

a final written agreement."

¶ 5    The customer assistant coverage criteria agreement, Number 30, entered into by the parties more than a decade ago and incorporated into its current CBA via article 20.5, deals with the assignment of unionized customer assistants (CAs). The CTA and the union agreed to meet prior to a periodic job-selection procedure to review CA staffing at each rail station; the CTA agreed to provide the union with passenger data at certain rail stations; and the CTA agreed to consider staffing rail stations with additional unionized CAs where traffic warranted. It also states, in part, that the Union agrees "to refrain from pursuing, advancing, or supporting any present or future action of any kind in any contractual, judicial, administrative or other forum concerning the subject matter of this agreement, except as may be necessary to enforce the provisions hereof." Pursuant to the above-quoted language, in March 2009, the Union filed a grievance alleging that the CTA failed to comply with the terms of agreement Number 30. An arbitration hearing on the grievance was begun on June 14, 2010 and testimony was presented. However, after only one day of an arbitration hearing, the Union suspended its participation in the grievance procedure by securing a stay. The arbitrator issued no ruling. Instead of completing the arbitration process it had begun, the Union filed the instant declaratory judgment action in circuit court on July 9, 2010 and alleged that its 10-year-old agreement Number 30 with the CTA was entered into by its Union officials without those officials receiving adequate consideration and requested rescission of the agreement. The Union argued that the CTA had a preexisting legal duty to bargain with the Union over terms and conditions of employment and, therefore, agreement Number 30 was "illusory and nominal."

¶ 6    On December 30, 2010, the CTA moved to dismiss this action pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2008)) and argued that the circuit court lacked subject matter jurisdiction over the Union's complaint because the Act divested it of any jurisdiction over the matter complained of by the Union. The motion was fully briefed, and on April 12, 2011, the circuit court heard oral argument on the motion. On May 3, 2011, the circuit court granted the CTA's motion to dismiss for lack of jurisdiction because the Union failed to exhaust its nonjudicial remedies. The circuit court acknowledged the comprehensive statutory scheme of the Act governing collective bargaining and labor practices for public employers and their employees subject to collective bargaining agreements. The Act provides for mandatory nonjudicial conflict resolution. Section 8 of the Act states that each CBA "shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement." " 'Section 8 of the Act provides that all grievance disputes must be resolved by final and binding arbitration, unless there is a joint agreement of the employer and the union to the contrary.' " *Illinois Fraternal Order of Police Labor Council v. Town of Cicero*, 301 Ill. App. 3d 323, 334 (1998) (quoting *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254 (1988)).

¶ 7    Specifically, section 16 of the Act provides as follows:

"Exhaustion of nonjudicial remedies. After the exhaustion of any arbitration mandated by this Act or any procedures mandated by a collective bargaining agreement, suits for

-3-

violation of agreements *** between a public employer and a labor organization representing public employees may be brought by the parties to such agreements in the circuit court in the county in which the public employer transacts business or has its principal office." 5 ILCS 315/16 (West 2008).

The circuit court held that the above-quoted Act provision requires the parties to exhaust procedures mandated by their CBA before seeking judicial review because the parties' CBA contains specified procedures, including arbitration for resolving their contract disputes.

¶ 8        Pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2008)), the Union filed a motion to vacate and/or modify the circuit court's May 3, 2011 ruling and reargued that the Union is seeking to invalidate its agreement Number 30 with the CTA for lack of adequate consideration, not arbitrate the terms of the agreement. On July 15, 2011, the circuit court denied the Union's motion. This timely appeal by the Union followed.

¶ 9                                II. ANALYSIS

¶ 10        On appeal, the Union argues that the side agreement is a separate, distinct, independent contract from the CBA and it can and should be litigated separately from the CBA and solely in state court because it is seeking rescission of the contract and not enforcement of the contract terms. Even though the parties' CBA incorporates all the listed side agreements attached as Exhibit A, including Number 30, into its current CBA, the Union argues that it is a separate contract and, therefore, it is not required to go through the grievance and arbitration process spelled out in the CBA regarding the terms of the side agreement. The employer states that the Union's complaint was properly dismissed because the CBA and the side agreement cannot be severed from each other as the entire Exhibit A, including side agreement Number 30, was incorporated into the CBA. Both relate to the treatment of its Union employees, which is covered by the CBA and all the incorporated side agreements it has with the Union.

¶ 11                          A. Standard of Review

¶ 12        We review the circuit court's dismissal order pursuant to section 2-619 of the Code of Civil Procedure *de novo* and, as part of the review, accept all well-pleaded facts contained in plaintiff's complaint and in any uncontradicted evidence submitted with the motion as true. *Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153 (1999). In the instant case , neither party disputes the facts as laid out in the complaint. Neither party denies that the portions of the CBA and the side agreement in the record are accurate. Therefore, the question on appeal is whether, absent any genuine issue of material fact, the dismissal was proper as a matter of law. *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110 (1999) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

¶ 13                      B. Challenging a Contract's Validity Does
                            Not Mean There is No Arbitrability

¶ 14        In its May 3, order dismissing this case for lack of subject matter jurisdiction, the circuit

court observed the following:

"Although the parties have not cited, and the Court's own research has not disclosed, any Illinois authority precisely on point, the Court has concluded that the decisions in [*Board of Education of*] *Warren Township High School* [*District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155 (1989),] and the non-precedential order of the Seventh Circuit Court of Appeals in *Parkland Environmental Group, Inc. v. Laborers' International Union of North America, Laborers' Local 447*, Case No. 09-2895, 390 Fed. Appx. 574 (7th Cir. July 28, 2010) (unpublished opinion) (Reply Br., Ex. A) provide guidance in construing the [Act] and in particular Section 16, concerning the allocation of authority between the courts and administrative bodies. Under that construction, this Court has determined that it lacks jurisdiction."

¶ 15    As previously stated, the Union argues that resolution of their declaratory judgment action regarding this one side agreement can be maintained independently of the CBA. Specifically, the Union argues that the side agreement Number 30 is an independent contract and not a part of the CBA and, thereby, proscribes reliance on the CBA's terms to resolve the instant claim. In order to do this, the Union should have also maintained that any terms of the side agreement do not conflict with or are not enhanced by any terms contained in the parties' CBA, because it was clearly incorporated into the CBA through Exhibit A.

¶ 16    First, we disagree with the Union's characterization of the agreement in question as a private, independent side agreement between the Union and the employer that is not affected in any way by their CBA and, conversely, does not affect the CBA. The side agreement was entered into by the Union and employer during the period covered by a CBA. The CBA at issue was in full force and effect at the time the parties negotiated the side agreement. Clearly, at the time the side agreement was entered into, the Union was exercising its power to collectively represent the interests of its employees with the CTA with regard to the workplace and those employees were already covered by the parties' CBA. By necessity, any action on the side agreement, even an action to declare it void for lack of sufficient consideration, would necessarily involve interpretation of the CBA and its multitude of provisions and any amendments, including examination of valid consideration and the intent of the parties regarding the meaning of the CBA and any side agreements.

¶ 17    The scope of any CBA together with any attachments is considered a term of the agreement. Therefore, it is also subject to arbitration. *United Steel Workers International Union v. TriMas Corp.*, 531 F.3d 531, 537 (7th Cir. 2008). "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). When a CBA provides for a grievance procedure and arbitration as a means for settling disputes, those procedures are the exclusive method to redress violations of that agreement. *Spooner v. Armour-Dial*, 131 Ill. App. 3d 929 (1985). Recourse to a lawsuit is not available until those procedures have been exhausted. 5 ILCS 315/16 (West 2008); *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048 (2008). If a union does not exhaust its contractual remedies under the CBA prior to bringing a state court claim, a circuit court must dismiss the claim. *Amalgamated Transit Worker's Union, Local 241 v. Pace Suburban Bus Division*, 407 Ill. App. 3d 55 (2011); see also *Board of Education of Warren Township*

*High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165 (1989) ("Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature may define the 'justiciable matter' in such a way as to preclude or limit the jurisdiction of the circuit courts.").

¶ 18    Significantly, the union and the employer were operating under a CBA at the time the union and the CTA entered into the side agreement Number 30. The side agreement between the union and the CTA can only be effective insofar as it is in sync with the parties' CBA. Therefore, the union cannot void the side agreement without a request to review the parties' CBA. Resolution of the union's claim that it obtained insufficient consideration for the side agreement which involved the workplace for the CTA employees it represents necessarily involves examination of the customs and practices of the workplace that the CBA governs for those same employees in order to maintain consistency and fairness. The Act is a comprehensive method that, in part, aids the parties in resolving disputes arising under a CBA by specialists in the field of labor law. 5 ILCS 315/2 (West 2008) (policy statement for Act, in part states that "[i]t is the purpose of this Act to regulate labor relations between public employers and employees *** and resolution of disputes arising under collective bargaining agreements"). We see no reason to disrupt this carefully crafted scheme for resolving labor disputes by our legislature. The same is true for the grievance and arbitration procedure agreed to by the parties in their CBA.

¶ 19    The union's position is that it was free to negotiate side agreements that are incorporated into a CBA with the employer and then attempt to avoid the effects of such side agreements by litigating directly in state court to void them despite the existence of a CBA between the parties. This would directly contravene the stipulations of the Act providing for swift resolution of workplace disputes through grievance and arbitration, as well as for consistent interpretation of contract terms governing the workplace. It would also discourage employers from resolving single issue disputes with the union through the use of side agreements that are meant to be an addendum to a CBA. After all, the parties cannot envision every factual or legal circumstance that will arise when initially negotiating a CBA. The Act protects the collective bargaining process by barring the parties' access to the courts without first exhausting their nonjudicial remedies agreed to in their CBA. Accordingly, this court finds that the Union's state law contract claim is preempted by the Act and the provisions of the parties' CBA because the Union's claim regarding the side agreement is inextricably intertwined with an analysis of the parties' CBA.

¶ 20    C. Request to Void the 10 year-old Agreement
for Lack of Consideration

¶ 21    As evidenced by the footnote to Exhibit A to the parties' CBA that incorporates 38 side agreements, including agreement Number 30, which is the subject of the instant case, the Union and the CTA agreed that negotiations would continue in good faith with regard to all listed agreements with a goal of reaching a final written agreement. The Union and the CTA acknowledged in this footnote that although the agreements listed in Exhibit A are

incorporated into their CBA, the agreements do not represent the parties' final say in the matters and they are subject to ongoing negotiations. To sanction a lawsuit by the Union to seek rescission of agreement Number 30 would relieve the Union of its obligation under the CBA to work together with the CTA and undermine their mutual goal of reaching a final resolution on the matter at hand. This judicial action is not sanctioned anywhere in the Act.

¶ 22                                    III. CONCLUSION

¶ 23      For all the forgoing reasons, the circuit court's order that granted the CTA's motion to dismiss for lack of subject matter jurisdiction is affirmed.

¶ 24      Affirmed.